CHARLES J. SWANSON and another *vs.* MISSISSIPPI & RUM RIVER BOOM COMPANY.

*February 14, 1890.*

**Riparian Owner—Action for Obstructing Navigation.**—The right to use a navigable river is a public, and not a private, right, and the owner of land on the stream cannot maintain an action for an illegal obstruction of navigation which prevents his use of this public right.

**Same—Injury to Private Right must Appear.**—To entitle him to maintain a private action, the obstruction must constitute an invasion or violation of some private right, as distinguished from the public right which he has of navigating the river in common with the rest of the public.

**Same—Insufficient Pleading and Evidence.**—*Held,* that certain of the causes of action were properly dismissed, because they did not state facts constituting special damage for which a private action would lie; and that the others were also properly dismissed, because the evidence did not

tend to connect the injuries complained of with any illegal or negligent act of the defendant, or to show that they were the proximate result of any such act.

Action brought in the district court for Hennepin county, to recover $13,065 and interest as damages sustained by reason of the alleged unlawful acts of defendant mentioned in the opinion. At the trial before *Young,* J., all the causes of action were dismissed. Plaintiffs appeal from an order refusing a new trial.

*Davis & Farnam,* for appellants.

*Jackson, Atwater & Hill,* for respondent.

MITCHELL, J. The plaintiffs allege that they were riparian owners of two tracts of land on the Mississippi river,—one in Anoka county, which they used as a yard for the manufacture of brick, and another in Wright county, 35 miles above, which they used for the purpose of piling wood, to be conveyed by river down to their brick-yard; that the defendant, a corporation created by the laws of this state, (Sp. Laws 1867, *c.* 134,) had wrongfully and unlawfully interfered with and obstructed the channel of the river, by driving piles therein, fastening booms, and detaining large quantities of logs therein, thereby absolutely preventing the navigation of the river between plaintiffs' two tracts of land. Predicated upon this alleged illegal obstruction of the navigation of the river, plaintiffs set up 11 causes of action for damages. The first, second, third, fourth, ninth, and tenth are all alike, viz., that at the several dates named the plaintiffs had wood piled on their upper tract, which they contemplated transporting by river to their brick-yard below, but were prevented from doing so by these obstructions to navigation, and were compelled to leave it on the upper tract for over a year, whereby it became injured and depreciated in value. The eighth cause of action is not in principle different from these. It is that by these obstructions the plaintiffs were prevented from transporting a lot of wood by river from the upper to the lower tract, and were compelled to take it out of the river at a point where they were not owners of the shore, and were compelled to pay the riparian owner the sum of $50 for the privilege of doing so. It is not alleged that the plaintiffs had started to transport the wood down the river, not knowing of or

anticipating the existence and effect of these obstructions before they embarked upon the use of the river. Hence it does not fall within the category of those cases where a person who has actually started to travel a highway, or embarked on the navigation of a river, is unexpectedly stopped by an obstruction, and is compelled to turn back, or is put to expense in removing the obstruction, which some authorities hold constitutes special damage for which a private action will lie, distinguishing it from a case where a person merely had the use of the highway in contemplation. *Rose* v. *Miles*, 4 Maule & S. 101. But see *Winterbottom* v. *Derby*, L. R. 2 Exch. 316; *Houck* v. *Wachter*, 34 Md. 265; *Blackwell* v. *Old Colony R. Co.*, 122 Mass. 1. The eleventh cause of action is that plaintiffs, by reason of being thus prevented from transporting this wood by river to their brick-yard, were compelled to buy at great expense other and inferior fuel for use in their business of brick-making, and that by reason of the use of such inferior fuel a large quantity of brick were spoiled.

When the case was called for trial, the court, on defendant's motion, dismissed the case as to each of these several causes of action. The ground upon which the motion was made and granted is not stated, but it doubtless was that none of them stated facts constituting a cause of action. In this the trial court was clearly right. The wrong alleged is the obstruction of the navigation of the river, which is a public nuisance. The right of plaintiffs to navigate the river is not a private, but a public right, which they are entitled to only in common with the whole public; and the facts alleged only show that the present consequential damages to them from being prevented from navigating the stream may be greater in degree, but not different in kind, from those suffered by other riparian owners or the rest of the public who may desire to use this highway. It is not alleged that these obstructions resulted in any trespass upon or actual invasion of the private property of the plaintiffs, or that they cut off all access to it, but, taking the allegations of the complaint at their full value, they simply show that defendant has committed a public nuisance by obstructing a public highway, which deprives the plaintiffs of the cheapest and most convenient route by which to convey their wood from their wood-lot to their brick-yard. The case, there-

fore, clearly comes within the familiar rule that an individual cannot maintain a private action for a public nuisance by reason of any injury which he suffers in common with the public; that it is only when he sustains special injury, differing in kind, and not merely in degree or extent, from that sustained by the general public, that an individual may recover damages in a private suit. We think the case is fully covered by the following, among other, decisions of this court: *Shaubut* v. *St. Paul & Sioux City R. Co.*, 21 Minn. 502; *Rochette* v. *Chicago, Mil. & St. Paul Ry. Co.*, 32 Minn. 201, (20 N. W. Rep. 140;) *Barnum* v. *Minn. Transfer Ry. Co.*, 33 Minn. 365, (23 N. W. Rep. 538;) *Shero* v. *Carey*, 35 Minn. 423, (29 N. W. Rep. 58.) The principle and its reason are thus stated by Lord Coke: "For if the way be a common way, if any man be disturbed to go that way, or if a ditch be made overthwart the way so as he cannot go, yet shall he not have an action upon his case; and this the law provided for avoiding of multiplicity of suits, for if any one man might have an action, all men might have the like." 1 Co. Inst. 56*a*. While universally recognizing this principle, the courts have not always been clear or consistent in its application; sometimes seeming to confound, for special damage, some special circumstances in the situation of the individual by reason of which he has suffered from the obstruction of the highway damages greater in extent, but the same in kind, as those sustained by the general public. We think the correct rule to be that to constitute special damage there must be an invasion or violation of some private right of the individual, as distinguished from the public right which he has of using a public highway in common with the rest of the public. What we apprehend Lord Coke means by the reason assigned for the rule is that a mere public right to the use of a highway which an individual has only as a member of the public, and in common with them, must be asserted and maintained by the public as such, instead of permitting each individual to maintain a private action to abate the public nuisance, or for damages for an invasion of a mere public right; and such a rule, we think, is sustained by considerations both of principle and public policy. Our conclusion is that the court was right in dis-

missing the case as to these causes of action. The eleventh might clearly have been dismissed upon the ground that the damages were remote, and not proximate.

2. Upon the fifth, sixth, and seventh causes of action, the plaintiffs submitted their evidence, and when they rested the court dismissed them also, on the ground that plaintiffs had failed to make out a cause of action, which ruling is assigned as error. It is unnecessary to consider the questions discussed by counsel as to the extent and nature of the powers of the defendant under its charter, for we have been unable to discover anything in the evidence introduced or offered which, under the narrowest possible view of these charter powers, tends to connect the injuries complained of with any illegal or negligent act of defendant, or to show that they were the result (proximate at least) of any such act. Take, for example, the fifth cause of action; as to one matter all that the evidence offered would tend to prove is that there was a jam of logs against the piers of Anoka bridge, and that, in passing through, plaintiffs' wood-raft struck a "sweeper" that projected from the jam, and was broken up. But the defendant did not build and maintain the bridge piers, and, assuming the logs belonged to defendant, (which was not proved,) it does not appear what caused the jam. There is not a particle of evidence that it was caused by any negligence of the defendant, or that it was derelict in its duty in efforts to break it. Without any reference to the defendant's charter, the courts will take judicial notice that floating logs is a legitimate use of this public stream, if exercised in a proper manner, and that, for obstructions resulting from such use by unavoidable accident, the log-owner would no more be liable than would the owner of a steamboat which might accidentally sink while lawfully navigating the river. Take, again, the seventh cause of action, which was for damages caused by logs and *debris* cast against or upon plaintiffs' shore. There was not a particle of evidence offered that defendant's booms or piers caused this, or that it was caused by any negligence or fault of defendant in driving or handling its logs. In short, nothing was proved or offered to be proved, except the bare fact that it happened. It was perhaps in-

tended to bring this cause of action within the doctrine of *Weaver* v. *Miss. & Rum River Boom Co.*, 28 Minn. 534, (11 N. W. Rep. 114,) and *McKenzie* v. *Miss. & Rum River Boom Co.*, 29 Minn. 288, (13 N. W. Rep. 123;) but an examination of those cases will show how far short of them, on the facts, this case falls. In another instance, a raft was caught between the shore and some logs set loose by the Otsego ferryman,—an act for which defendant was in no way responsible, unless, forsooth, it had no right to use the river at all for floating logs. In another case a raft of sheer-booms of the defendant came down the river, and destroyed a raft of wood, but no offer was made to prove how this occurred, or that it was caused by any negligence or misconduct of the defendant. For anything that appears, it might have been an unavoidable accident or one of the perils of navigation. The same general criticism will apply to the evidence offered to support the sixth cause of action, which we think might also have been dismissed on the complaint, as not stating a case of special damage for which a private action would lie. In fact plaintiffs throughout the case seem to have proceeded on the theory that they had a right to the navigation of the river, absolutely free and clear of all logs. But such a conception of their rights was fundamentally erroneous. Floating logs is as legitimate a use of the stream as floating wood-rafts or running steam-boats; and, as two bodies cannot occupy the same space at the same time, the use of the river for one purpose is necessarily, in a certain sense, an obstruction to its use for another purpose, and each person must, in his use of it, submit to such inconveniences as necessarily or naturally result from the proper exercise of the same right by others. The only instance we can find where there was an attempt to connect, even indirectly, plaintiffs' loss with what might have been an unlawful act of defendant, was where, what plaintiffs call the regular channel of the river being obstructed, they ran their wood-raft down another course, and struck a sand-bar. In view of what occurred on the trial in connection with the offer of this evidence, we must assume the fact to be that plaintiffs, with previous knowledge that this channel was wholly obstructed, started out with their raft to run it down another way, and there met with this accident.

On this state of facts there was no natural or proximate connection between the injury and the act of defendant in obstructing the channel. It would be analogous to a case where a man, knowing that one road was obstructed, started out on his journey by another, and perhaps poorer road, and there met with an accident.

Order affirmed.