ALFRED D. ALDRICH *vs.* THEODORE WETMORE *et al.*

Argued Dec. 19, 1892.　Decided Jan. 10, 1893.

**In a Private Action for Obstructing a Street, all Access Cut Off, not Necessary.**

To entitle a party to maintain a private action for obstructing a public street, it is not necessary that the obstruction should cut off all access to his property.

**Former Decisions Reviewed.**

Former decisions of this court reviewed and explained.

**The Nature of the Right Affected Determines the Action.**

It is the nature of the right affected, and not the number who suffer, which determines whether a private action will lie for creating or maintaining a public nuisance.

**No Private Action Lies for Obstructing the Public Generally.**

Hence, if an obstruction in a street merely interferes with a person's traveling on the street,—a public right, enjoyed in common with people generally,—no private action will lie; but, if he has property or business in the vicinity of the obstruction which is injured by reason of the interruption of convenient access to it, the right interfered with is a private property right, and he may maintain his action for damages.

**Verdict Set Aside because Some of the Jurors Privately Viewed the Place.**

*Held*, also, that a new trial was properly granted, on the ground of misconduct of jurors in making independent investigations out of court in respect to matters in suit.

Appeal by defendant Theodore Wetmore from an order of the District Court of Hennepin County, *Pond*, J., made July 25, 1892, granting plaintiff's motion for a new trial.

The plaintiff, Alfred D. Aldrich, for a first cause of action stated that he had for three years carried on the business of a barber on the ground floor at No. 105 Second Street South in Minneapolis, and lived with his family in the second story. That defendant owned the adjoining lot on the south, and on May 5, 1891, took up the sidewalk in front of it, and excavated a cellar on his lot and un-

der the sidewalk, and deposited the earth in the street in front of both his lot and plaintiff's shop, whereby the sidewalk and street were obstructed, travel prevented, and the surface water collected and detained in front of plaintiff's shop and in the excavation. That on this account plaintiff lost many of his customers, and the value of his business was impaired.

For a second cause of action plaintiff stated that by this excavation on Wetmore's lot, an old privy vault and cess-pool were uncovered and exposed. That noxious and offensive exhalations have since arisen therefrom and pervaded his premises and the vicinity, and prevented his customers from coming there, and have seriously interfered with the comfortable enjoyment of his shop and residence. He demanded judgment against Wetmore for $2,000 damages. Wetmore answered that he procured a permit to build a brick store on his lot, and made a contract with Seymour & Hart to excavate the cellar and build the stone wall; that they did the work as speedily as was practicable, and restored the sidewalk within two weeks. He denied that he left earth in the street, and also denied all the other allegations of the complaint.

The issues were tried May 3, 1892. It was shown that the work was suspended before the cellar wall was completed, and had never been resumed, that the water from the street gutter ran into it, and that the sidewalk as restored was a gangway of loose plank. Plaintiff admitted on the trial that access to his building was not totally cut off; that it was not interfered with in the opposite direction up the street to the north; whereupon the court held he had no cause of action on the first count and excluded all proof thereof. Plaintiff excepted. On the other count the jury returned a verdict for the defendant. Plaintiff moved the court for a new trial for errors of law occurring at the trial and excepted to by him, and for misconduct of the jury. He supported the motion with affidavits of residents of the vicinity, stating that they saw three of the jurors examining the excavation and premises one evening during the trial. Defendant produced the affidavit of the jurors, that after court adjourned for the day, they went by the excavation and looked down into it, but did not go into it, and were not there over three minutes;

that what they saw in no way influenced them in arriving at their verdict, and that they did not mention their visit to the other jurors; that the verdict was based exclusively upon the evidence presented in court.    See *Woodbury* v. *City of Anoka, post,* p. 329.

The court granted a new trial of both causes of action, and defendant appeals.

*Cobb & Wheelwright,* for appellant.

The complaint did not allege or show that access to plaintiff's premises had been cut off, by the alleged obstructions, or that plaintiff's damages were different in kind from those sustained by the rest of the public in general.    It was conceded in open court that access to plaintiff's premises had not been cut off by the alleged obstructions.    A plaintiff who seeks to recover damages for obstruction to a public street must show as a condition precedent, that access to his premises has been cut off by the obstruction complained of.    *Lakkie* v. *Chicago, St. P., M. & O. Ry. Co.,* 44 Minn. 438; *Shaubut* v. *St. Paul & Sioux City R. Co.,* 21 Minn. 502; *Rochette* v. *Chicago, M. & St. P. Ry. Co.,* 32 Minn. 201; *Barnum* v. *Minnesota Transfer Ry. Co.,* 33 Minn. 365; *Swanson* v. *Mississippi & R. R. Boom Co.,* 42 Minn. 532; *Brakken* v. *Minneapolis & St. L. Ry. Co.,* 29 Minn. 41; *Thelan* v. *Farmer,* 36 Minn. 225; *Adams* v. *Chicago, B. & N. R. Co.,* 39 Minn. 286.

The alleged misconduct of the three jurors was brought to the attention of the court on the motion for a new trial by affidavits, which were clearly insufficient to warrant the court in granting a new trial, as it does not affirmatively appear therefrom that any prejudice resulted to plaintiff by reason of the alleged acts of the jurors.    It does not appear that they visited the *locus in quo* at the suggestion or through any influence of the defendant.    It does not appear that the jurors talked among themselves, or with any other person at the time of their visit or at any other time, concerning the nuisance.    If there is a presumption that prejudice resulted, such presumption is overcome by the affidavits of the jurors to the contrary.    *Ortman* v. *Union Pacific R. Co.,* 32 Kan. 419; *Hayward* v. *Knapp,* 22 Minn. 5; Thompson, Trials, § 2611.

*Charles L. Smith*, for respondent.

This nuisance was only a private one. It was not a public nuisance, although it may have injured a great many persons. The injury was to individual property. *King* v. *Morris & Essex R. Co.*, 18 N. J. Eq. 397; *Francis* v. *Schoellkopf*, 53 N. Y. 152; *Wylie* v. *Elwood*, 34 Ill. App. 244; 16 Amer. & Eng. Encycl. of Law, 926; Sedgwick, Damages, § 35.

While total obstruction of the street is an injury to the private rights of the individual, still a partial obstruction, when it interferes with the rights of property and turns away customers from an established business, is an injury to the private rights of the individual, and he may maintain an action against the wrongdoer. *Callanan* v. *Gilman*, 107 N. Y. 360; *Stetson* v. *Faxon*, 19 Pick. 147; *Flynn* v. *Taylor*, 53 Hun, 167; *Pennsylvania* v. *Wheeling & B. Bridge Co.*, 13 How. 518; *Platt & Speith* v. *Chicago, B. & Q. R. Co.*, 74 Iowa, 127; *Rose* v. *Groves*, 5 Man. & G. 613; *Simmer* v. *City of St. Paul*, 23 Minn. 408; *Goebel* v. *Hough*, 26 Minn. 252; *Ofstie* v. *Kelly*, 33 Minn. 440.

The granting of a new trial for the misconduct of the jury is in the sound discretion of the trial court, and it requires a clear case against its action, to justify this court in reversing the decision of such court. *Hewitt* v. *Pioneer Press Co.*, 23 Minn. 178; *Koehler* v. *Cleary*, 23 Minn. 325.

MITCHELL, J. The complaint in this action set up two causes of action, each for damages to plaintiff's property and business by the wrongful act of the defendants in committing and maintaining a nuisance; the nuisance alleged in the first being the obstruction of a public street, and that alleged in the second being the maintenance, on an adjoining lot, of a vault or cesspool, which emitted noxious and offensive smells.

The court excluded all evidence as to the first, on the ground that the complaint did not state facts constituting a cause of action. The case went to trial on the second, and resulted in a verdict for the defendants. The court granted a new trial of both,—of the first on the ground that he had erred in holding that the complaint did

not state a cause of action, and of the second on the ground of mis-
conduct of some of the jurors.    Taken in connection with an admis-
sion made on the trial, and which had the effect of an amendment of
the complaint, the allegations as to the first cause of action are, in
substance, that the plaintiff owned a building abutting on a public
street, the ground floor of which he occupied as a barber shop, in
which he had built up a large and profitable business, having a large
number of customers who patronized his shop, their means of access
thereto being the street referred to; that the defendant, who owned
the lot adjoining on the south, unlawfully entered upon this street,
and tore up the sidewalk in front of his own lot, and excavated the
earth where the sidewalk had been, and also from his own lot, and
deposited the earth in the street in front of plaintiff's premises, as
well as his own, whereby the street and sidewalk in front of both be-
came impassable, and the approach to plaintiff's building entirely
obstructed and cut off, except by means of the sidewalk from the
north; that these obstructions have ever since continued; and that,
solely by reason thereof, plaintiff's customers could not safely or con-
veniently reach his shop, and consequently have ceased to resort there;
and that thereby the value and good will of plaintiff's business have
been wholly lost and destroyed.

The ground upon which the court below held, and the ground upon
which it is claimed here, that this did not constitute a cause of action,
is that the damage alleged was not special or peculiar to the plain-
tiff, but the same in kind as that sustained generally by the public
by reason of the obstruction of the public highway.

The contention of defendants' counsel is that the doctrine of this
court is that no private action will lie for an obstruction of a public
street unless the plaintiff's access to his property has been *entirely
cut off*.   In this the learned counsel is in error.   Certainly, we never
intended to announce any such doctrine.   The parent case in the
line of decisions on that subject is *Shaubut* v. *St. Paul & Sioux City
Ry. Co.*, 21 Minn. 502.   An examination of the statement of facts in
that case, in connection with the diagram attached, will show that
the plaintiff proved no special or peculiar damage to his property or
business, but merely that the obstruction interfered with his right

to use a public highway, a right which he had in common with the rest of the public. The fact that the obstruction did not cut off access to his land was referred to, not as implying that that was necessarily essential to a cause of action, but as one fact, among others, showing that no special or peculiar damage was proved; the fact that all access is cut off by the obstruction being, in and of itself, special damage, which will entitle a party to maintain a private action; for, as is said in *Brakken* v. *Minneapolis & St. L. Ry. Co.*, 29 Minn. 41, (11 N. W. Rep. 124,) "it may not be very important to the general public whether they shall be able to get to the private property of an individual, but it is important to the individual whether he should be able to get to and from his residence or business, and whether the public have the means of getting there for social or business purposes. If there be an obstruction in the street in front of or near his abutting property, so as to prevent access to it, the damage which he sustains is different, not merely in degree, but in kind, from that experienced in common with other citizens." *Rochette* v. *Chicago, M. & St. P. Ry. Co.*, 32 Minn. 201, (20 N. W. Rep. 140,) and *Barnum* v. *Minnesota Transfer Ry. Co.*, 33 Minn. 365, (23 N. W. Rep. 538,) merely follow the Shaubut Case, and the fact, among others, that it was not alleged that access to the property was cut off was mentioned for the same purpose, viz. to show that the complainants did not allege any special damage. *Shero* v. *Carey*, 35 Minn. 423, (29 N. W. Rep. 58,) and *Thelan* v. *Farmer*, 36 Minn. 225, (30 N. W. Rep. 670,) both went off on the point that the complaints did not contain any sufficient averments of special damage; the latter case holding that the character of the injury must be particularly alleged, so that the court may determine whether it is different from that sustained by the public generally; that a general statement of damage calling it "special," without showing in what it consists, is not sufficient, but adding, "if the nuisance cut off or *materially obstructed* access to their property, it would be different."

In *Swanson* v. *Mississippi & R. R. Boom Co.*, 42 Minn. 532, (44 N. W. Rep. 986,) the plaintiff owned two riparian estates on the Mississippi river, about thirty-five miles apart, and the defendant, as alleged, obstructed the river at an intervening point, so as to pre-

vent the plaintiff from navigating the stream with wood boats to carry wood from the upper estate to the lower. It was held that the rule is that, to constitute special damage, there must be an invasion or violation of some private right of the individual, as distinguished from the public right which a party has of using a public highway in common with the rest of the public, and that the facts merely showed that the obstruction prevented the plaintiff from exercising his public right of navigating the river, for which no private action would lie. Whether or not it was rightly applied to the facts of that case, the rule laid down was unquestionably correct. Some things said in *Lakkie* v. *Chicago, St. P., M. & O. Ry. Co.*, 44 Minn. 438, (46 N. W. Rep. 912,) possibly furnish some slight support to counsel's contention, but the appeal in that case was from an order sustaining a demurrer to a rather ambiguous and obscure complaint, and it was held, in substance, that it did not show that plaintiff's access to his premises (not adjacent to the obstruction) was thereby so impaired as to entitle him to maintain a private action. But in that case *it was not alleged that the railroad* (the obstruction complained of) *was unlawfully or wrongfully built across the street*, and on that ground alone the demurrer could have been sustained. The case is clearly no authority for defendants' contention.

We have thus reviewed our own decisions, for the reason that possibly the frequent allusion to the fact that access to the property has not been cut off might have conveyed to others, as it has to defendants' counsel, the impression that we intended to hold that no private action would lie for the unlawful obstruction of a public street, however much it interfered with access to property, and thereby diminished its value, or injuriously affected the business conducted thereon, unless it cut off access entirely,—a doctrine opposed to both common justice, and to the decisions of every court in the country.

So far from having so held, we expressly decided in *Simmer* v. *City of St. Paul*, 23 Minn. 408, that an action would lie in just such a case as the present, although the plaintiff had access to his premises by a side street. The liability of the city in that case was not, as counsel claim, statutory in its origin. The rule of law as to the liability of municipal corporations for such acts was referred to

merely for the purpose of showing that they were not exempt from liability, on account of their public character, where private persons would be liable, under the same circumstances. Of course, the rule is well settled that no person can maintain an action for injuries received of a public nuisance unless he has sustained special damage, different in kind from that sustained by the rest of the public, but the law has always been, from the Yearbooks down, that if a party has sustained any peculiar injury, beyond that which affects the public at large, an action will lie for redress. Lord Coke, although stating the general rule that a man shall not have an action for a common nuisance done in the highway, adds: "But if any particular person, afterwards, by the nuisance done, has more particular damage than any other, there, for that particular injury, he shall have a particular action on the case." *Williams' Case*, 3 Coke, 145.

A nuisance may be at the same time both public and private, public in its general effect upon the public, and private as to those who suffer a special or particular damage therefrom, apart from the common injury. The public wrong must be redressed by a prosecution in the name of the state; the private injury by private action. Take, for example, an establishment erected near a public street, which produces such noxious and offensive smells as to annoy the whole community. To all who come within its reach it is a nuisance, because it offends the senses; but, unless they have property or business in the vicinity which is injuriously affected, the injury to them would be one common to the public generally, for which no private action would lie; but those who live in the neighborhood, or who own property there, which is impaired in value by reason of the nuisance, may have their private actions, because their damage is special.

Again, take the case of an obstruction of a street. Those who are injured merely because they are prevented from traveling that street could not maintain private actions, for it is only a public right, enjoyed in common with people generally, which has been interfered with; but those whose property or business in the immediate vicinity is impaired in value or destroyed, by reason of the interruption of

·conven-ent access to the premises, may have their actions, because it is their private property rights that have been interfered with.

It is not the number who suffer, but the nature of the right affected, which determines whether an action will lie. If the nuisance merely affects the rights enjoyed by citizens as a part of the public, as, for ·example, the right to travel a public highway, the only redress is by proceedings in the name of the state, although only one man has been actually prejudiced. If, on the other hand, the right interfered with is a private one, as where one suffers damage in person or estate by reason of the nuisance, an action will lie, whether the number of those who have suffered is one or one hundred. Among the numerous cases which might be cited, see *Stetson* v. *Faxon*, 19 Pick. 147, and *Wilkes* v. *Hungerford Market Co.*, 2 Bing. N. C. 281, 2 Scott, 446.

In the present case the damage which the plaintiff suffered, and for which he is seeking to recover, is not that common to all persons who have been merely prevented from using the street for passage, but damage to his business, (which is property,) resulting directly from the creation and maintenance of the nuisance complained of. For this he can recover. What we have said as to the first cause of action is equally applicable to the second.

2. The court was clearly justified in granting a new trial, on the ground of the misconduct of three of the jurors in making independent investigations for themselves in respect to matters in suit, by going and examining the excavation where the nuisance set up on the second cause of action was alleged to have been maintained. Upon the trial the main issue in the evidence was whether, in excavating his lot for a cellar, defendant had removed all the contents and seepings of a vault which had previously existed on the premises; and this turned largely upon the character of the subsoil, and upon the depth of the excavation, as to which facts there was a sharp conflict in the evidence. The probable effect upon the jurors' minds of what they saw during this examination is therefore quite apparent. The theory of jury trials is that all information about the case must be furnished to the jury in open court, where the judge can separate the

legal from the illegal evidence, and where the parties can explain or rebut; but, if jurors were permitted to investigate out of court, there would be great danger of their getting an erroneous or one-sided view of the case, which the party prejudiced thereby would have no opportunity to correct or explain. *Winslow* v. *Morrill,* 68 Me. 362.

Affidavits of jurors in general terms that they were not affected by what they saw, and that their verdict was rendered wholly on the evidence given in court, are of little or no weight. They may think that this was so, and still their minds have been insensibly affected by what they saw. *State* v. *Andrews,* 29 Conn. 100. Indeed, in some states such affidavits will not be received at all. *State* v. *Hascall,* 6 N. H. 352; *Whitney* v. *Whitman,* 5 Mass. 405.

While the affidavit of a juror himself or of a third party of his statements as to what occurred in the jury room are not admissible to impeach a verdict, yet, when the affidavit of the juror is introduced in support of the verdict, it is competent, for the purpose of impeaching him, to show that he has made statements since the trial inconsistent with the statements in his affidavit. We see no reason for disturbing the action of the court in granting a new trial. *Hewitt* v. *Pioneer Press Co.,* 23 Minn. 178.

Order affirmed.

(Opinion published 53 N. W. Rep. 1072.)